IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Kassandra Brown, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 25 C 9283 |
| | ) | |
| | ) | |
| City of Chicago School | ) | |
| District #299 et al., | ) | |
| | ) | |
| Defendants. | ) | |

Memorandum Opinion and Order

A former teacher at Curtis Elementary School in Chicago, plaintiff Kassandra Brown has sued her employer, City of Chicago School District #299 ("CPS"), the employer of a contractor at her school, Aramark Management Services, LP ("Aramark"), and a contractor at the school, John Doe #1 ("Doe"). Brown alleges that she was harassed by other employees and contractors at the school and seeks relief under Title VII, the Illinois Human Rights Act, the Illinois Civil Rights Act, and Illinois common law. Before me is CPS's partial motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). I deny that motion.

1

**I.**

The following facts are taken from Brown's complaint. For present purposes, I accept the allegations therein as true.

Brown became a teacher at Curtis Elementary School ("Curtis") in 2019. In March 2021, a security guard at Curtis named Dwayne Haynes ("Haynes") started sexually harassing Brown, who reported the harassment to Curtis's principal soon after it began. In March 2022, Haynes entered Brown's classroom, "patted her on the buttocks, kissed her on the forehead, and asked her out on a date." ECF 1 at 5. Brown made another report to the principal following this incident. She did not receive any response to her reports from CPS.

In August 2022, Brown reached out to the CPS legal department about the reports but received no follow-up. As a result of the harassment and CPS's "failure to investigate or act...false allegations and rumors [began circulating] among staff members, suggesting inappropriate behavior" on Brown's part. *Id.* These rumors harmed her reputation at Curtis.

In September 2022, Haynes allegedly grabbed a school nurse, at which point he was suspended pending an investigation. In May 2023, Brown received a letter from CPS reporting that its investigation into her complaints had revealed no wrongdoing on Haynes's part. In June 2023, Haynes showed up at a carnival event

2

at Curtis, and although Brown alerted the principal to his presence, nothing was done to remove him.

In early March 2024, Aramark employee Doe came into Brown's classroom. He petitioned Brown for oral sex, put his arm around her, and then groped her. Brown ejected him from the room. Brown once again reported the incident to the principal. CPS did nothing to remedy the harassment or respond to her report.

After the incident, Doe "began spreading false allegations and rumors regarding [Brown] stating that she had sexual relationships with other staff members." *Id.* at 6. These rumors circulated widely at Curtis. As after the incident with Haynes, CPS did nothing to restrain the rumor-mongering which followed Brown's harassment.

On March 21, 2024, some kind of altercation took place between Doe and a security guard at Curtis named David Underwood. Later that day, Curtis's principal suspended Brown "pending investigation of the incident between [Doe] and the security guard."[1] *Id.* at 9. Either that day or shortly afterwards, CPS sent Brown a letter informing her that she would be suspended while CPS investigated whether she had "'engaged in inappropriate conduct on

---

[1] Brown does not describe how one incident relates to the other. In its answer, CPS intimates that Underwood and Doe were fighting about Brown for some reason. ECF 21 at 11, 15.

Board property.'" *Id.* at 10. Brown has been on indefinite leave since March 21, 2024.

## II.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 290 (7th Cir. 2016). A complaint must provide "'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed.R.Civ.P. 8(a)(2)). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). In applying this standard, I accept all well-pleaded facts as true and draw all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 639 (7th Cir. 2018).

Statutes of limitations are normally pled as an affirmative defense, and dismissal of claims as time-barred is appropriate only where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under

4

the governing statute of limitations." *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008) (citations omitted). In other words, a plaintiff will only plead herself out of court if she states facts that make it plain that "relief is barred by the applicable statute of limitations." *Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011).

### III.

Brown names CPS as a defendant in Counts I-IV and VII, alleging that CPS's failure to respond to or remedy her harassment by Haynes and Doe created a hostile work environment and that CPS put her on an indefinite suspension in March 2024 as retaliation for her reports of sexual harassment. She frames her hostile work environment claims in Count I under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, and in Count III under the Illinois Human Rights Act ("IHRA"), 775 Ill. Comp. Stat. § 5/1-101 *et seq.* Brown frames her retaliation claims under the same statutes in Counts II and IV, respectively. And then, in Count VII, Brown frames a related discrimination claim under the Illinois Civil Rights Act ("ICRA"), 740 Ill. Comp. Stat. § 23/5 *et seq.*

CPS asserts that all of the alleged harassment prior to December 2023 is time-barred and argues that whatever parts of Counts I-IV rest on that behavior must be dismissed. As to Count VII, CPS contends that at least in the field of employment

5

discrimination, the IHRA pre-empts the ICRA and, for that reason, Count VII must be dismissed.

## A. Time Limits

Under both Title VII and the IHRA, a plaintiff must file a charge with the Equal Employment Opportunity Commission ("EEOC") or the Illinois Department of Human Rights ("IDHR") within 300 days of an employer's violation of those statutes. 42 U.S.C. § 2000e-5(e)(1); 775 Ill. Comp. Stat. § 5/7A. In *National R.R. Passenger Corp. v. Morgan*, the Supreme Court considered when an "unlawful employment practice" occurs for the purpose of the filing window. 536 U.S. 101, 108–122 (2002). The Court rejected the view that any "practice" constituting a discrete discriminatory action— failure to promote, retaliatory firing, etc.—could be ongoing. *Id.* at 111–13. Rather, the Court found, each of those actions takes place "on the day that it 'happen[s].'" *Id.* at 110. As such, barring equitable relief, a plaintiff must file her charge with the EEOC or a state agency within 300 days of the relevant adverse employment action. *Id.* at 113. Recovery for any discrete actions taken more than 300 days before the filing date are then time-barred. [2] *Id.*

---

[2] The Court left some wiggle room by pointing out that equitable doctrines, such as tolling or estoppel, could in rare cases work to allow plaintiffs to recover for actions taking place beyond the 300-day window. *Morgan*, 536 U.S. at 113–14.

In that same case, the Court noted that Title VII also counts the creation of a hostile work environment as an "unlawful employment practice," and that, unlike other unlawful practices, the creation of a hostile work environment "cannot be said to occur on any particular day." *Id.* at 115. Rather, that practice "occurs over a series of days or perhaps years," as the result of many different acts. *Id.* And the Court found that as long as one of the employer's acts creating the environment takes place within the 300-day window, a plaintiff will be able to bring suit as to all acts making up the hostility, even if they took place years before. *Id.* at 115–19.

Brown cross-filed charges with the EEOC and the IDHR on October 4, 2024, making the 300-day cutoff December 9, 2023. CPS argues that recovery for any alleged conduct before that date, including everything related to Brown's harassment by Haynes in 2021–2022, is barred, and that I must dismiss Counts I–IV insofar as they relate to that conduct. CPS further contends that Brown has failed to plead facts making out the kind of continuing violation which would allow her to recover for the conduct predating the 300-day cutoff. Brown responds that continuing violations have nothing to do with it. Instead, she has asserted retaliation claims in Counts II and IV that are based on her suspension, which took place within the 300-day window. And in

7

Counts I and III, she has pled a hostile environment which spanned the entire period from 2021 to 2024, including at least one act within the 300-day window.

It is unclear on exactly what grounds CPS moves for dismissal or partial dismissal of Counts II and IV other than that, "in formulating the Title VII and IHRA claims, [Brown] relies, in part," on the allegations dating back to 2021 and 2022. ECF 23 at 4. But in both counts, the adverse employment action that Brown cites is her 2024 suspension. ECF 1 at 15, 19. Per *Morgan*, because CPS suspended Brown on March 21, 2024, that adverse employment action "happened" on March 21, 2024. 536 U.S. at 110. It is immaterial that some of the protected activity (her reports of harassment) that Brown *engaged in* took place in 2021 and 2022—it is when CPS allegedly *retaliated* which is at issue, and that took place well within the 300-day window.

As to Counts I and III, CPS's argument is also off base. CPS insists that at these counts, Brown has failed to make out a "continuing violation" which would allow her to recover for the harassment she experienced in 2021 and 2022. The continuing violation doctrine "allows courts to consider conduct that would ordinarily be time barred as long as the untimely incidents represent an ongoing unlawful employment practice." *Id*. at 107. (citations omitted).

The problem is that Brown nowhere argues that she was subject to a continuing violation of Title VII or the IHRA.[3] Instead, she clearly pleads at Counts I and III that her coworkers' harassment and CPS's failure to respond to or remedy it created "a hostile work environment." ECF 1 at 12, 16 (language identical at each page). And the *Morgan* Court held that, as long as one act constituting a hostile work environment falls within the 300-day window, a plaintiff can recover for entirety of the environment, even if the other acts constituting it took place long outside of the window. 536 U.S. at 118–19. But even after Brown responded to CPS's motion clarifying that she was alleging a hostile work environment—ECF 28 at 2–3—CPS replied that her claim was time barred "because [Brown] did not properly plead a 'continuing violation.'" ECF 32 at 3 (citing the pre-*Morgan* case *Garrison v. Burke*, 165 F.3d 565, 569 (7th Cir. 1999)). CPS does nothing to convince me that Brown has failed to state a claim at Counts I and III because it never addresses the theories that she puts forth in those counts.

Now, it is true that a plaintiff has to make out some continuity of events even in the hostile environment context. If

---

[3] She likely avoids making an argument under the continuing violation doctrine because *Morgan* largely eliminated it. *Id.* at 113–14.

Brown wishes to recover for a hostile environment which existed in 2021 by citing actions CPS took in 2024, she has to show that the hostile environment she experienced in 2021 was more-or-less the same one that she was still experiencing in 2024. *See Milligan-Grimstad v. Stanley*, 877 F.3d 705, 712-13 (7th Cir. 2017) (to connect allegations within and without the statute of limitations, the court "must find that the series of allegations describe continuous conduct rather than isolated incidents."). Where, for example, periods of hostility are broken up by periods of amity, they are not continuous. *E.g. Mochu v. Advocate Aurora Health, Inc.*, 2023 WL 4930280 (N.D. Ill. Aug. 2, 2023) (finding discontinuity where plaintiff enjoyed years of a hospitable work environment between periods of a hostile work environment).

CPS gestures at this issue when it argues that Haynes's harassment was too distant to constitute a continuing violation with Doe's harassment. But CPS misses the mark because, while the abuse from Haynes and Doe was spread over time, it is CPS's *response* to the treatment Brown suffered at the hands of other employees that is at issue. *Isaacs v. Hill's Pet Nutrition, Inc.*, 485 F.3d 383, 386 (7th Cir. 2007) ("[T]he entity responsible for complying with Title VII is the employer...employers are responsible for their own conduct (or omissions)—which is to say, for how they respond (or fail to respond) after receiving notice

that an employee may be suffering from disparate treatment at co-workers' hands."). Brown has alleged that CPS consistently failed to respond to her reports of harassment, address her concerns about her vulnerability to further harassment, or remediate the rumor-filled environment which her harassers created in the wake of their abuse. And I cannot find that Brown has not plausibly pled that CPS subjected her to a hostile environment from 2021 to 2024. Because at least one of CPS's actions making up the hostile environment (its failure to respond to or remediate Doe's harassment in March 2024) took place within the 300-day window, the claims at Counts I and III are not time-barred.

### B. The IHRA's Preemption of the ICRA

At Count VII, Brown alleges substantially the same discrimination as at Counts I–IV, but this time under the ICRA, and rephrased to mirror the language of that act at 740 Ill. Comp. Stat. § 23/5. ECF 1 at 24–30. CPS contends that Count VII should be dismissed because the IHRA has pre-empted the field of government employment discrimination in Illinois and that the ICRA thus does not support an independent cause of action.

There is room for argument on this point. The IHRA provides that "no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act" except "as provided by law." 775 Ill. Comp.

11

Stat. 5/8-111(D). It is settled that that language has pre-empted common law claims based on civil rights violations. *E.g. Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 934 (7th Cir. 2017). Whether it pre-empts statutory claims, including government employment discrimination claims under the ICRA, is less clear, "and the little case law existing is wildly inconsistent." *Kainz v. Illinois Dept. of Corrections*, 2022 WL 22970784, at *1, *6 (C.D. Ill. May 25, 2022).

Some cases find that there is no preemption, citing the ICRA's broad language: "Because the ICRA specifically provides that parties may file claims under that act...the IHRA does not preclude [such] claim[s]."*E.g.*, *Smith v. Bd. of Ed. for Waukegan Pub. Sch. Dist. # 60*, 2021 WL 4459529, at *1, *7 (N.D. Ill. Sept. 29, 2021). Others have found that the ICRA only really exists to reinstate the right to disparate-impact litigation in the wake of its limitation by the U.S. Supreme Court. [4] *E.g.*, *Illinois Native American Bar Ass'n v. Univ. of Illinois by Its Bd. of Trustees*, 856 N.E.2d 460, 466-67 (Ill. App. Ct. 2006) ("[The ICRA] merely created a new venue in which plaintiffs could pursue in the State

---

[4] For background, *see* "Rescinding Portions of Department of Justice Title VI Regulations to Conform More Closely with the Statutory Text and to Implement Executive Order 15281," DOJ Final Rule, AG Order No. 6509-2025 (Dec. 10, 2025), https://www.federalregister.gov/d/2025-22448.

courts discrimination actions that had been available to them in the federal courts."). In *Kainz*, a court in this circuit concluded after a thorough and wide-ranging textual and statutory construction analysis that the IHRA preempts the ICRA, at least in the employment context, under the Illinois principle that the more specific statute pre-empts the more general one. 2022 WL 22970784 at *5-*9.

CPS relies on *Kainz* and other less thorough cases finding pre-emption. Brown responds with cases which do not find pre-emption and argues, contra *Kainz*, that Count VII does not make out a run-of-the-mill instance of employment discrimination; rather, it asserts "a multi-year pattern of discriminatory treatment" composed of "systemic practices" which are "methods of administration" that the ICRA is meant to regulate, versus the "employment discrimination" which falls under the IHRA. ECF 28 at 9. It is unclear how framing a hostile environment claim as dealing with an employer's methods of administration (a hostile environment claim always will, *Isaacs*, 485 F.3d at 386) makes it any different from the run-of-the mill kind, but I will take the route of the court in *Tapia v. City of Chicago*, No 19 C 1257, 2019 WL 3716915, at *1, *7 (N.D. Ill. Aug. 7, 2019) (declining to decide the preemption question where it was sparsely briefed). Neither party has explored the issue in real detail and, given that Count

VII concerns the same facts as Counts I-IV, it is unlikely that allowing the ICRA claim to proceed will affect discovery. The parties may brief the issue further at summary judgement, if the case proceeds to that stage.[5]

**IV.**

For the foregoing reasons, I deny CPS's motion to dismiss.

**ENTER ORDER:**

_____

**Elaine E. Bucklo**
United States District Judge

Dated: January 16, 2026

_____

[5] If they do so, they would be wise to engage with the analysis in *Kainz*, the question of whether Count VII's framing as concerning "methods of administration" rather than employment makes any difference to preemption, and the contention in *Ill. Native American Bar Ass'n* that the ICRA was meant only to resurrect disparate-impact litigation.

14